KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
Brendan M. Scott
200 West 41st Street, 17th Floor
New York, NY 10036
Tel. (212) 972-3000
Fax. (212) 972-2245

*Proposed Attorneys for the* Debtor

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| CHOXI.COM, INC, | : | Case No. 16-13131 (SCC) |
| Debtor. | : | |

**AFFIDAVIT OF EDDY FRIEDFELD PURSUANT TO**
**S.D.N.Y. LOCAL BANKRUPTCY RULE 1007-2**

STATE OF NEW YORK    )
                     ) SS:
COUNTY OF NEW YORK   )

Eddy Friedfeld, being duly sworn, says:

1. I am the Chief Restructuring Officer of Choxi.com,. Inc. ("Debtor") the Debtor and Debtor in possession. I am generally familiar with the business and financial condition of the Debtor. In accordance with S.D.N.Y. Local Bankruptcy Rules ("Local Rules") 1007-2 and 9077-1, I submit this affidavit ("Affidavit") in connection with the voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") filed in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), on December 5, 2016 (the "Petition Date").

2. I have previously served in similar roles, including as Executive Vice President,

Chief Restructuring Officer and General Counsel of two large, privately held, high-end international wholesale jewelry debtors, as Executive Vice President, Chief Restructuring Officer, General Counsel and Responsible Officer of Tender Loving Care Health Care Services, Inc. (Bankr. E.D.N.Y., Case No. 02-88020(SB)), as member of the Special Situations Committee of Coudert Brothers LLP (Bankr. S.D.N.Y, Case No. 06-12226(RDD)), as Responsible Officer of Piquant, LLC d/b/a Air America Radio (Bankr. S.D.N.Y. Case No. 06-12423(RDD)), and Responsible Officer of Intellitravel Media, Inc. (Bankr. S.D.N.Y. Case NO.: 12-14815 (ALG)). Through this service, I have gained substantial experience in debt restructuring and plan negotiation and implementation, among other areas. Therefore, I believe that my appointment as Chief Restructuring Officer satisfies the requirements of Section 1129(a)(5)(ii) of the Bankruptcy Code, to the extent it is applicable.

**Required Contents of Affidavit**

(i)     Nature of Debtor's Businesses

    a.     History of Debtor

3.     Choxi.com, Inc. (f/k/a Nomorerack.com, Inc.) is a Delaware corporation incorporated on April 23, 2012. On September 19, 2012, Nomorerack.com Canada, Inc., (renamed as Choxi.com Canada, Inc. in April 2015) a wholly owned Canadian subsidiary, was formed.

4.     The Debtor is an online retailer offering discount brand name and non-brand name merchandise, including bed-and-bath goods, home décor, kitchenware, furniture, watches and jewelry, apparel, electronics and computers, sporting goods, and designer accessories, among other products. The Debtor sells these products through its internet website located at www.choxi.com ("Website").

b. <u>Circumstance Leading to Filing</u>

5. In October 2016, the Debtor was forced to cease operating its business as a result of, among other things, sustained operating losses. The Debtor's management team, led by Deepak Agarwal, Co-founder and CEO, and his now wife and Chief Merchandising Officer Co-Founder Melina Ash, ran the business with a major focus on generating top-line gross revenue, with a lesser regard to the underlying profitability of the Debtor. While gross margins averaged as high as 25% to 30% over the operating lifespan of the Debtor, substantially all of the profits were undercut by heavier spending on advertising to generate revenue, high refund and return rates, chargebacks and similar costs. Net losses ranging from $7.4 million to as high as $21 million were incurred every year the business was in operation.

6. In addition, management never hired a permanent Chief Financial Officer to help steer the Debtor towards a cash-flow positive business structure. This contributed to management doubling down on financially unsound strategies to increase gross revenue with the hopes of having the Debtor acquired, even after the Debtor's outstanding preferred stock net financing of approximately $41 million had been exhausted.

7. In order to increase sales promotions on its website, management sought and obtained financing at aggressively high levels. For instance, the Debtor's largest investor, Oak Investment Partners ("<u>Oak</u>"), invested $25 million in the Debtor.

8. Upon information and belief, the Debtor's decline may have also been the result of potentially fraudulent prepetition activity, including with respect to the Oak investment. As part of Oak's investment, it was represented to the Debtor by an Oak general partner (Iftikhar Ahmed), who was also a Debtor director, that Oak could not make the investment unless the

3

Debtor repurchased its Series A stock, which was owned by an Asian e-commerce entity in which Oak was also invested and on whose Board Mr. Ahmed also sat. Upon information and belief, the repurchase funds (nearly $11 million) were not received by the Asian e-commerce entity but rather diverted by Mr. Ahmed into an account he personally controlled. Upon information and belief, Mr. Ahmed fled to India and is currently under indictment by the Securities and Exchange Commission in connection with securities fraud.

9. The Debtor also has reason to believe that, based on a preliminary investigation, there may be other fraudulent transfers related to the Debtor's outsourced customer service function in the Philippines.

10. As the Debtor's Series B financing was depleted without profitability and with revenue decreasing, the Debtor sought additional financing, but was only able to obtain merchant cash advances at exceedingly high interest rates.

11. By August 2016, the Debtor ceased making all payments, the vendors stopped shipping merchandise to customers, and the website was still taking orders with an inability to fulfill them due to unpaid suppliers' refusal to ship orders until payment was received.

12. In August 2016, negotiations began for a bridge loan financing. In September 2016, the Debtor obtained $2 million in secured bridge loan financing from Ronak Khichadia, TVII Corp. and Bhungalia, LLC, two of whom were former (and are at present time again) directors. As a condition of the loan, Mr. Agarwal was required to resign as CEO and relinquish all control of day to day activities of the Debtor. A restructuring team was brought in. It restarted limited operations for a period of approximately 45 days. Despite some success, there was a realization that "the engine was extremely damaged" as a result of erosion of consumer and supplier confidence, and lack of funds to advertise. At that point, no additional capital was

available, and the Debtor laid off its employees and ceased operations permanently.

(ii)    Debtor's Case Was Originally Commenced Under Chapter 7

13.    The Debtor's case was initially commenced under chapter 7 on November 10, 2016 by the filing of an involuntary petition by Sanders Collection Inc., Consumer Shopping Inc, and Elite Brands Inc.  No trustee has been appointed in the case.

(iii)    Prepetition Creditors' Committee

14.    To the best of Debtor's knowledge, no pre-petition creditors' committee was formed prior to the Petition Date.

(iv)    Twenty Largest Unsecured Creditors

15.    A list setting forth the Debtor's twenty (20) largest unsecured creditors, excluding those persons who constitute "insiders" under Bankruptcy Code section 101(31), is attached hereto as **Exhibit A**.  As required by Local Rule 1007-2(a)(4), **Exhibit A** includes the creditors' names, addresses, telephone numbers (for persons familiar with the account, if available), amount of each claim, and an indication of whether the claims are contingent, unliquidated, disputed, or partially secured.

(v)    Five Largest Secured Creditors

16.    Pursuant to Local Rule 1007-2(a)(5), the Debtor's largest secured creditors are:

   a. Ronak Khichadia
   b. TVII Corp.
   c. Bhungalia, LLC
   d. 9th LLC
   e. N.D. Gems, Inc.
   f. American Express Bank, FSB

(vi)    Assets and Liabilites

17.    As required by Local Rule 1007-2(a)(6), a summary of the Debtor's assets and liabilities is attached as **Exhibit B**.

5

    (vii)    <u>Publicly Held Stock</u>

18.    As required by Local Rule 1007-2(a)(7), no classes of shares of stock, debentures, or other securities of the Debtor are publicly held. DIYA Irrevocable Trust holds 50.9% of the Debtor's outstanding stock, Deepak Argawal holds 11.9% of the Debtor's outstanding stock (through unexercised options), Oak Investment Partners XIII, LP holds 10.72% of the Debtor's outstanding stock and NMK E-tailing, LLC holds 4.9% of the Debtor's outstanding stock.

    (viii)    <u>Debtor Property Held By Others</u>

19.    The Debtor has no property in possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity other than as follows: The Debtor's credit card processor, Paysafe, which has an office located at 2 Place Alexis Nihon, 3500 de Maisonneuve Blvd., Suite 700, Montreal, Quebec, Canada H3Z3C1, is holding $675,000 of the Debtor's funds in a reserve account to cover any chargebacks, or refunds initiated by the Debtor's customers should the Debtors not have funds available to cover such chargebacks or refunds.

    (ix)    <u>Debtor's Office Space</u>

20.    As required by Local Rule 1007-2(a)(9); the Debtor leases office space located at 381 Park Avenue South, 4th Floor, New York, NY 10016 (the "<u>Office Space</u>"), but as part of an action in the Civil Court of the State, City and County of New York, the Debtor has agreed to surrender the Office Space by December 31, 2016.

    (x)    <u>Location of Debtor's Assets and Books and Records</u>

21.    Pursuant to Local Rule 1007-2(a)(10), the majority of the Debtor's books and records are maintained at the Office Space. Substantially all of the Debtor's physical assets are

located at the Office Space.

    (xi)    <u>Threatened or Pending Actions Against the Debtor</u>

22.    Pursuant to Local Rule 1007-2(a)(11), a list of pending or threatened actions is included in the Statement of Financial Affairs which are being filed contemporaneously herewith.

    (xii)    <u>The Debtor's Senior Management</u>

23.    Pursuant to Local Rule 1007-2(a)(12), Haresh Bhungalia is the Chairman of the Debtor's Board of Directors, Ronak Khichadia is the Debtor's acting Chief Executive Officer and Eddy Friedfeld is the Debtor's Chief Restructuring Officer.

**B.**    **<u>Additional Information Required by Local Rule 1007-2(b)</u>**

24.    In accordance with Local Rule 1007-2(b), the Debtor intends to continue the operation of its business and the management of its properties as Debtor and Debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

25.    In accordance with Local Rule 1007-2(b)(1), the estimated amount of the weekly payroll to employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the Petition Date is $0.

26.    In accordance with Local Rule 1007-2(b)(2), the amounts paid and proposed to be paid for the thirty (30) day period following the Petition Date for services rendered by the Debtor's officers and directors is approximately $20,000 for the Chief Restructuring Officer and $4,750 for Sunil Joseph, Vice President of Finance both of which amounts were paid in advance on November 23, 2016. The Debtor does not anticipate making any additional payments for services rendered by the Debtor's officers and directors without an order of the Court.

27.    The Debtor has not engaged a financial or business consultant, therefore Local

Rule 1007-2(b)(2)(C) is not applicable.

28. In accordance with Local Rule 1007-2(b)(3), a schedule of estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue but remain unpaid shall be provided.

**C.    Sale Motion**

29. Contemporaneously with this Affidavit, the Debtor is filing a motion (the "Sale Motion") for approval of a license agreement with a stalking horse bidder for the license of substantially all of the Debtor's assets on an interim basis, subject to better and higher offers as may be received at auction (the "License Agreement"). The Debtor intends to market its assets for license or sale to the successful bidder at auction, free and clear of all liens, claims and encumbrances pursuant to Section 363 of the Bankruptcy Code, as further set forth in the Sale Motion.

30. In mid-October due to the lack of continued investor funding, the Debtor was forced to end its operations abruptly. As CRO, I immediately began discussions and negotiations with potential purchasers or licensees of the Debtor's business and assets in an effort to continue the Debtor's business and maximize its going concern value. Specifically, I invited potential interested parties to submit term sheets for the license or purchase of the Debtor's assets. I received three (3) such term sheets, including from the stalking horse bidder and from two (2) other established e-commerce retailers. The Debtor's board of directors determined that the stalking horse bidder would facilitate the license more quickly than any other interested party and would be best able to maximize the value of the Debtor's assets. In addition to the economic terms of the licensing transaction, the board of directors considered that, unlike other parties in interest, the stalking horse bidder had an enhanced familiarity with the Debtor's business, assets

8

and employees and had existing relationships with a majority of the Debtor's significant vendors. As a result, the board of directors determined that that the License Agreement with the stalking horse bidder represented the highest and best offer for the Debtor's assets.

31. In my opinion as CRO of the Debtor and based on my marketing efforts to date, I believe that the License Agreement currently represents the highest and best offer for the license or sale of the Debtor's assets and the best opportunity for the Debtor to realize value for the benefit of creditors.

**D.    Conclusion**

32. The Debtor reserves the right to amend or supplement any of the attached schedules in the event additional information is obtained by the Debtor.

33. The Debtor believes that the protection of the Bankruptcy Court will enable it to maximize the value of its assets for the benefit of the estate and its creditors.

[*signature page to follow*]

/S/ Eddy Friedfeld
Eddy Friedfeld

Sworn to and subscribed before me this
5th day of December, 2016

/s/ Christopher J. Reilly
Notary Public

Fill in this information to identify the case:

Debtor name: **Choxi.com, Inc.**
United States Bankruptcy Court for the: **SOUTHERN DISTRICT OF NEW YORK**
Case number (if known): **16-13131 (SCC)**

☐ Check if this is an amended filing

## Official Form 204
### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders 12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| CMIDEV Inc.<br>309 Prestige Tower,<br>F. Ortigas Jr. Road<br>Ortigas Center,<br>Pasig City - 1605<br>Phillipines | | | Contingent<br>Unliquidated<br>Disputed | | | $1,112,400.00 |
| Center Link Media, LLC<br>1401 N. University Drive, #200<br>Coral Springs, FL 33071 | Eric Siversen<br>eric@centerlinkmedia.com<br>(954) 254-9332 | | | | | $722,991.59 |
| Yahoo.com<br>14010 FNB Parkway<br>Omaha, NE 68154 | Thomas Burg, Esq.<br>TBurg@bbslaw.com<br>(650) 857-9500 | | Contingent<br>Unliquidated<br>Disputed | | | $630,753.95 |
| AOL<br>AOL Advertising Inc.<br>General Post Office,<br>P.O. Box 5696<br>New York, NY 10087-5696 | Amanda Freyre<br>amanda.freyre@pillsburylaw.com<br>(212) 858-1181 | | | | | $581,402.93 |
| Bespolitan<br>42 Iowa Ave.<br>Paterson, NJ 07503 | | | | | | $481,797.87 |
| EPI Enterprises<br>650 Madison Avenue<br>Manalapan, NJ 07746 | | | | | | $431,353.27 |
| NYS Department of Taxation & Finance<br>80-02 Kew Gardens Rd.<br>Kew Gardens, NY 11415 | Levelt Panosky<br>Levelt.Panosky@tax.ny.gov<br>(718) 459-4742 | | Contingent<br>Unliquidated<br>Disputed | | | $400,885.00 |

Debtor **Choxi.com, Inc.**
Name

Case number *(if known)* **16-13131 (SCC)**

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **ACET Venture Partners, LLC**<br>**2917 Chalfont Lane**<br>**Plano, TX 75023** | **Tomer Damti**<br><br>**tomer@acetvp.com**<br>**(877) 331-8417** | | **Contingent**<br>**Unliquidated**<br>**Disputed** | | | **$391,396.96** |
| **Yeidid International Inc.**<br>**15 West 37th Street, 10th Fl.**<br>**New York, NY 10018** | **Toby Yeidid**<br><br>**Toby@yeidid.com**<br>**(212) 575-2730** | | | | | **$338,745.55** |
| **Mobile Star, LLC**<br>**250 Liberty Street**<br>**Metuchen, NJ 08840** | | | **Contingent**<br>**Unliquidated**<br>**Disputed** | | | **$332,251.75** |
| **World Trading 23**<br>**24700 Ave. Rockerfeller**<br>**Santa Clarita, CA 91355** | **Vic Kouyoumjian**<br><br>**vic@worldtechtoys.com**<br>**(818) 497-2366** | | | | | **$330,810.76** |
| **Reliable Knitting Works**<br>**dba Reliable of Milwaukee**<br>**100 Campbellsport Dr**<br>**Campbellsport, WI 53010** | | | **Contingent**<br>**Unliquidated**<br>**Disputed** | | | **$322,979.72** |
| **U.S.A. Dawgs, Inc.**<br>**4120 W. Windmill Lane, #106**<br>**Las Vegas, NV 89139** | **Steven Mann**<br><br>**directlinkinfo@sasktel.net**<br>**(702) 260-1060** | | **Contingent**<br>**Unliquidated**<br>**Disputed** | | | **$305,976.80** |
| **Beepco LLC**<br>**Attn: Dan Bellino**<br>**281 N. Roosevelt Avenue**<br>**Chandler, AZ 85226** | **Dan Bellini**<br><br>**sales@beepcousa.com**<br>**(803) 315-2270** | | | | | **$304,535.55** |
| **FreedomPop.com**<br>**11301 Olympic Blvd., Suite 112**<br>**Los Angeles, CA 90064** | | | | | | **$297,337.07** |
| **Swiss Watch International**<br>**101 S State RD 7, Suite 201**<br>**Hollywood, FL 33023** | | | | | | **$278,310.18** |
| **Blue Ridge Home Fashions, Inc.**<br>**15761 Tapia Street.**<br>**Irwindale, CA 91706** | | | **Contingent**<br>**Unliquidated**<br>**Disputed** | | | **$272,083.84** |

Debtor **Choxi.com, Inc.**
Name

Case number *(if known)* **16-13131 (SCC)**

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Pearl Enterprises, LLC dba JR Trading Company 575 Prospect Street, Suite 251F Lakewood, NJ 08701** | | | **Contingent Unliquidated Disputed** | | | **$267,316.40** |
| **Qubit, Inc. 28 East 28th Street, 9th Floor New York, NY 10016** | | | **Contingent Unliquidated Disputed** | | | **$260,000.00** |
| **EP Technology Corporation USA dba Zmodo Technology Corporation Ltd. 1401 Interstate Drive Champaign, IL 61822** | | | **Contingent Unliquidated Disputed** | | | **$244,558.61** |

**Fill in this information to identify the case:**

Debtor name: **Choxi.com, Inc.**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF NEW YORK

Case number (if known): **16-13131 (SCC)**

☐ Check if this is an amended filing

Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals  12/15

### Part 1:  Summary of Assets

1. *Schedule A/B: Assets-Real and Personal Property* (Official Form 206A/B)

   1a. **Real property:**
   Copy line 88 from *Schedule A/B*......................................................................................................... $ **0.00**

   1b. **Total personal property:**
   Copy line 91A from *Schedule A/B*....................................................................................................... $ **1,486,086.62**

   1c. **Total of all property:**
   Copy line 92 from *Schedule A/B*......................................................................................................... $ **1,486,086.62**

### Part 2:  Summary of Liabilities

2. *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*................... $ **4,043,577.38**

3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

   **3a. Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*........................................................... $ **503,209.13**

   **3b. Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*............................... +$ **29,350,887.06**

4. **Total liabilities** .................................................................................................................................
   Lines 2 + 3a + 3b                                                                                                          $ **33,897,673.57**