NUTOVIC & ASSOCIATES
Isaac Nutovic
261 Madison Avenue, 26th Floor
New York, N.Y. 10016
Tel: (212) 421-9100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:                                                    Chapter 7

    CHOXI.COM, INC.
                                                   Case No. 16-13131(scc)

                                  Debtor
---------------------------------------------------------x

## DECLARATION IN OPPOSITION TO LICENSE OF DEBTOR ASSETS

    Isaac Nutovic, declaring under penalty of perjury pursuant to 28 U.S.C. §1746, in objection to the proposed license of substantially all of the of assets of Choxi.com, Inc. ("**Choxi**"), states:

    1.  I am counsel to the three creditors (the "**Petitioning Creditors**") who filed the involuntary petition commencing this case with claims totaling $326,054.20. I have been authorized to represent the opposition expressed in this declaration as being the position of the Petitioning Creditors and also of the following six additional creditors (with claim amounts as listed in the Debtor's schedules; the creditors' claim higher amounts): Centerlink Media, Inc.--$722,991; ACET Venture Partners --$391,396; TechRabbit-- $182,602; Shamrock Vendors--$151,676; Twelve1Ten--$165,610; Resultco--$46,710.

Summary of Objection

    2.  The proposed license disposes of the only material assets of the Debtor <u>solely</u> for the benefit of (i) the holder of the secured claim of the insider directors and the secured claim of the vendor who obtained its security interest just days outside the preferential period established by the creditors filing the involuntary petition. If the sale goes through, unsecured creditors are not

1

only left with nothing in this case, but they are also burdened with the entire costs of administration of this chapter 11 case. The unsecured creditors are better off with a chapter 7 trustee. The terms of the order approving the interim license should not foreclose an objection by creditors to the right of any party to credit bid or to argue for a modification of bidding procedures.

Background

3. Amidst published reports of wrongdoing related to Choxi f/k/a Nomorerack.com, (see end of article in http://www.wsj.com/articles/harvard-goldman-sachs-venture-capitalfugitive-1444261176), rumors that one of the principals had fled the country and the closing of the Choxi website, the Petitioning Creditors commenced this case on November 14, 2016.

4. On the evening of December 5, 2016 the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, together with Schedules, a Statement of Affairs and other documents. The Debtor also moved for emergency relief seeking to immediately license its only material assets subject to a later auction (the "**License Transaction**").

5. Based on the filings and other documents and information obtained from the Debtor, the following picture emerges:

Pre-petition a substantial fraud was perpetrated by one of Choxi's investment bankers in connection with a round of financing for Choxi;

There is some suspicion that substantial monies (likely millions of dollars) may have been siphoned off from Choxi's revenues to an entity in the Philippines;

In August of this year Choxi granted 9th LLC and N.D. Gems Inc (related entities, collectively the "**Vendor**") a security interest to secure antecedent debt in excess of $2 million. The UCC Financing Statements appear to have been filed on August 10, 2016 --just 96 days before this case was commenced;

In September of this year, the principal of the Debtor was ousted and replaced by a CRO. At the same time insider directors made a $2 million secured loan to the Debtor and arranged for the subordination of the security interests of the Vendor;

2

The License Transaction is not expected to realize more than $2 million and certainly not more than the total debt secured by these assets. The only guaranteed payment under the transaction is $480,000 and $60,000 in reduction of a claim which may not withstand scrutiny as being secured;

The only significant recovery available for unsecured creditors here is potential litigation recoveries. The $675,000 deposit with the credit card company is expected to be all or largely consumed by chargebacks; the lease security deposit will similarly be offset by the landlord;

The License Transaction is creating substantial costs and fees for the Debtor's estate including fees of the Debtor's counsel, a privacy ombudsman, U.S. Trustee fees and fees of a creditors committee which is likely to be formed given the creditor interest in this case;

6. Prior to filing this objection I contacted counsel for the insider secured creditors in an unsuccessful attempt to resolve this objection.

7. The conversion of this case to chapter 11 solely benefits the secured creditors who just happen to be (i) three insiders or (ii) the proposed Licensee and its affiliate. The Bankruptcy Court should not be used as a collection forum for secured creditors to liquidate assets without a tangible benefit to unsecured creditors. The reduction in secured claims here without any realistic possibility of getting additional material recovery is of no consequence; there is at least $30 million in debt scheduled in this case.

## Conclusion

8. For the foregoing reasons, the nine creditors listed above with claims totaling at least $1,987,039 object to the License Transaction and the entry of any related interim relief.

Dated: New York, New York
December 7, 2016

                                                                                           s/ *IsaacNutovic*
                                                                                           Isaac Nutovic, Esq.