**Hearing Date and Time: March 17 , 2017 at 11:00 a.m.**
**Objection Deadline: March 10, 2017 at 5:00 p.m.**

NUTOVIC & ASSOCIATES
*Counsel to Unsecured Creditors' Committee*
Isaac Nutovic, Esq.
261 Madison Avenue, 26th Floor
New York, N.Y. 10016
Tel: (212) 421-9100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:                                                                Chapter 11

      CHOXI.COM, INC.

                                        Case No. 16-13131(scc)

                        Debtor
----------------------------------------------------------x

## NOTICE OF MOTION OF CREDITORS' COMMITTEE FOR AN ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004

      PLEASE TAKE NOTICE that the annexed Application of the Committee of Unsecured Creditors for an Order Pursuant to Federal Rule of Bankruptcy Procedure 2004 (the "<u>Application</u>") will be considered at a hearing to be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, at the United States Bankruptcy Court, Southern District of New York, One Bowling Green, Courtroom 623, New York, New York 10004, on March 17, 2017 at 11:00 a.m. or as soon thereafter as counsel can be heard.

      PLEASE TAKE FURTHER NOTICE that objections, if any, to the Application shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 and shall be

served upon: (i) the Honorable Shelley C. Chapman, United States Bankruptcy Judge, at the United States Bankruptcy Court, One Bowling Green, Courtroom 623, New York, New York 10004-1408; (ii) the Office of the United States Trustee, 201 Varick St., Room 1006, New York, New York 10014, Attn: Greg Zipes; and (iii) Nutovic & Associates, 261 Madison Avenue, 26th Floor, New York, New York 10016., so as to be so filed and received no later than 5:00 p.m March 10, 2017.

Dated  New York, New York
       February 16, 2017

                NUTOVIC & ASSOCIATES
                Counsel to Unsecured Creditors' Committee

      By:s/*Isaac Nutovic*
        Isaac Nutovic, Esq.
        261 Madison Avenue, 26th Floor
        New York, N.Y. 10016
        Tel: (212) 421-9100

*NUTOVIC & ASSOCIATES*
*Counsel to the Creditors Committee*
*261 Madison Avenue, 26th floor*
*New York, New York 10016 (212) 421-9100*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
x------------------------------------------------------------x

In re:                                                          Chapter 11


                CHOXI.COM, INC,

                                                               Case No.: 16-13131 (SCC)
                                   Debtor
x------------------------------------------------------------x

## CREDITOR COMMITTEE'S APPLICATION FOR ORDER
## PURSUANT TO BANRUPTCY RULE 2004

      The Official Committee of Unsecured Creditors (the "Committee") appointed in the bankruptcy case of the above-captioned debtor (the "Debtor" or "Choxi") makes this application (the "Application") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Committee to serve document requests and deposition subpoenas on (i) , Rhonak Khichadia, (ii) Haresh Bhungalia and Bhungalia LLC (iii) Daniel Harrington and TVII Corp. (iv) Deepak Agarwal (v) Eddy Friedfeld (vi) Cliff Schneiderman and Cohen Schneiderman LLP and (vii) the Debtor. In support of its request, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

      The information in this application was obtained from court records, signed documents and informal interviews with persons associated with the Debtor or its creditors.

      After waging a campaign to get the CEO and founder of the Debtor, Deepak Agarwal, to relinquish control, three investors in the Debtor, Rhonak Khichadia, Haresh Bhungalia and Daniel Harrington (the "Insider Group"), entered into a transaction on September 2, 2016 (the "Insider Loan Transaction") in which they loaned $2 million to the Debtor and took a security

1

interest in all of its assets -- including a valuable mailing list and related website technology – while simultaneously taking control of the Debtor. It appears that no one on behalf of the Debtor evaluated either the terms of the transaction or whether the entire transaction was even beneficial to the Debtor and its creditors. At the request of the Insider Group's representatives, the vice president of the Debtor—its outside legal counsel -- merely signed the document without further inquiry. At the time the loan was made the Debtor was burdened with $30 million in debt and its operations had virtually, if not completely, ceased. Within seven weeks of making the loan, the Insider Group closed down the Debtor's operations leaving the Debtor burdened with even more debt, but leaving the Insider Group in charge of the Debtor's operations and a secured interest in its mailing list and website technology.

Prior to that time, the Debtor had never operated profitably. In the 4 ½ years of its existence it had run through approximately $40 million of proceeds of equity financing and accumulated $30 million in debt. The Committee has not been able to establish the purpose of the $2 million loan or any business plan for the monies loaned. It is unclear what the $2 million secured loan could have done other than degrade the Debtor's financial position while giving the Insider Group control over the Debtor's assets. At the time the Insider Group re-started the Debtor's operations, the Debtor appears to have been woefully undercapitalized. The Committee has unsuccessfully attempted to schedule informal meetings with Deepak Agarwal, the former CEO, and the Insider Group members or to obtain any documents or emails that might explain the circumstances of the Insider Loan Transaction.

## **JURISDICTION**

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1134.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief requested herein includes Bankruptcy Rule 2004.

## PROCEDURAL HISTORY

3. On November 10, 2016 (the "Petition Date"), an involuntary petition for relief was filed against the Debtor under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

4. On December 9, 2016, this Court entered an order granting the Debtor relief under chapter 11 of the Bankruptcy Code effective as of December 5, 2016.

5. On December 14, 2016, the Office of the United States Trustee appointed EliteBrand Inc., Pearl Enterprises LLC d/b/a JR Trading Company and Shamrock Industries LLC to the Committee pursuant to 11 U.S.C. § 1102.

## BACKGROUND

6. Choxi was an online retailer offering discount brand name and non-brand name merchandise, including bed-and-bath goods, home décor, kitchenware, furniture, watches and jewelry, apparel, electronics and computers, sporting goods, and designer accessories, among other products. It commenced operations in early 2012 and sold these products through its internet website.

7. In November 2012 the Debtor issued a Series A Redeemable Convertible Preferred Stock and received aggregate proceeds of $12 million.

8. In October 2013 the Debtor issued a Series B Redeemable Convertible Preferred Stock and received aggregate proceeds of approximately $40 million. (Of that amount approximately $11 million was allegedly misappropriated by Iftikhar Ahmed ("Ahmed"), a former board

3

member who was a partner in the largest Series B investor, Oak Investment Partners ("Oak")).

9. The Debtor's original management team, led by Deepak Agarwal ("Agarwal"), co-founder and former CEO, ran the business with a major focus on generating top-line gross revenue, with a lesser regard to the underlying profitability of the Debtor. While gross margins averaged as high as 25% to 30% over the operating lifespan of the Debtor, substantially all of the profits were undercut by heavier spending on advertising to generate revenue, high refund and return rates, chargebacks and similar costs. Net losses ranging from $7.4 million to as high as $21 million were incurred every year the business was in operation.

10. In 2014 the Debtor had its best year with gross revenues of approximately $324 million. It had hired investment bankers and was positioning itself for a sale of the company or another major financing transaction. But in April 2015 Ahmed was indicted for various transgressions, which include diverting approximately $11 million of the Debtor's Series B financing transaction. In the wake of the scandal, the lead banker discontinued its efforts to find a transaction partner. The Debtor, without a fresh infusion of capital, began to flounder. Revenues dropped almost in half-- to $177 million -- in 2015.

11. By September of 2015 there was already talk in the company of a cash crunch. The two largest investors other than Oak -- Haresh Bhungalia and Daniel Harrington (who were also the only directors on the Board who were not relatives of the CEO, Agarwal) each made unsecured loans to the Debtor of $1 million. The loans, which matured in September 2016, were personally guaranteed by Agarwal. Some payments were made against these loans but they went into default after a few months.

12. In the latter part of 2015 many lawsuits were being filed by unpaid vendors. The holiday season for 2015 did not go well and payments to vendors dried up. By mid-2016 many dozens of

lawsuits had been filed. Some lawsuits were disposed of by confessing judgement; most were delayed by invoking arbitration clauses.

13. Sometime in the spring or early summer of 2016, the Insider Group began pressuring Agarwal to relinquish control. They also consulted with Eddy Friedfeld, a restructuring specialist who is currently the Debtor's CRO.

14. At about the same time as the Insider Group was pressuring Agarwal, Harry Savalia the owner of Choxi's largest vendor and the former business partner of Khichadia was pressing the Debtor for a security interest to secure his companies' outstanding debt of approximately $1.8 million.

15. In May, 2016 Agarwal passed on a form security agreement for the Debtor's outside counsel to review. It proposed to grant a security interest to one of Savalia's entities, but counsel felt the form and the transaction was totally inadequate. He afterwards continued to reject similar requests to approve security documents in favor of Savalia's entities forwarded by Agarwal.

16. The Insider Group continued to pressure Agarwal to step aside. They apparently threatened to act on Agarwal's personal guarantee of the two $1 million loans which were maturing on September 25, 2016. They also reportedly told Agarwal that they would not enter into any transaction so long as an involuntary bankruptcy proceeding was threatened. At some point Savalia had threatened to file an involuntary petition if he was not given a security interest.

17. In early August the Insider Group's consultant, was installed as the Debtor's Chief Restructuring Officer. On August 9, 2016 Choxi granted a security interest in all of its assets to secure approximately $1.8 million of past due debt to Savalia's entities. Five days later, on August, 14, 2016 Agarwal resigned as CEO.

5

18.     Subsequently, the same attorney who represented Savalia in drawing up the documents which secured the antecedent debt due to his entities, represented the Insider Group in the Insider Loan Transaction executed on September 2, 2016. That transaction accomplished the following: (i) Agarwal and related parties ceded voting control of the controlling shares in the Debtor to the Insider Group through a proxy provision; (ii) all Agarwal related directors were replaced by the three individual members of the Insider Group and Khichadia became CEO (Exhibit A annexed); (iii) Bhungalia and Harrington agreed to forbear on Agarwal's personal guarantee of their separate $1million loans (Exhibit B) (iv) the Insider Group loaned $2 million pursuant to a Note (Exhibit C) which was secured by all assets of the Debtor pursuant to a Security Agreement  (Exhibit D); and (v) Savalia subordinated his entities' security interests to the Insider Group (Exhibit E).

19.     In or around the third week of October, 2016 with the proceeds of the $2 million loan dissipated, the Debtor announced to its vendors and employees it was closing the business. Subsequently after learning that officers and directors might have liability for unpaid employees' wages and benefits, the attorney for the Insider Group prepared an amendment to the Security Agreement document in the Insider Loan Transaction authorizing an increase in the $2 million secured loan to $3 million. The Insider Group then advanced additional sums to cover these expenses which might have carried personal liability to them individually.

## RELIEF REQUESTED

20.     Bankruptcy Rule 2004 provides that "[o]n motion of any party in interest, the court may order the examination of any entity . . . [as to] the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . . ." Fed. R. Bankr. P. 2004(a), (b).

21. The Committee wishes to establish the facts leading up to and surrounding the Insider Loan Transaction as well as the Insider Group's subsequent management of the Debtor, to determine whether the Insider Loan Transaction was equitable and made in good faith or whether the value of the Debtor's assets was diminished so that the Insider Group could gain control over the Debtor and its assets.

22. The Committee believes that relevant documents and information are in the possession, custody or control of (i) , Rhonak Khichadia, the Debtor's current CEO and a director who was a lender in the Insider Loan Transaction (ii) Haresh Bhungalia, a director of the Debtor who is also the agent for the Insider Group with respect to the Insider Loan Transaction, and Bhungalia LLC, the entity through which he made his contribution as lender in the Insider Loan Transaction (iii) Daniel Harrington, a director of the Debtor and TVII Corp., the entity through which he made his contribution as lender in the Insider Loan Transaction (iv) Deepak Agarwal, the Debtor's former CEO, (v) Eddy Friedfeld, who consulted with the Insider Group before the Insider Transaction, and is the current Chief Restructuring Officer (vi) Cliff Schneiderman who acted as vice president of the Debtor and his law firm Cohen Schneiderman LLP, which acted as outside counsel to the Debtor and (vii) the Debtor. Accordingly, the Committee respectfully requests that the Court enter an Order authorizing the Committee to serve document and deposition subpoenas on those parties.

23. The subpoenas will provide not less than fourteen (14) days from service of the subpoenas for the production of the records, documents, and electronic files requested above and not less than twenty-one (21) days from service of the subpoenas for the examination under oath.

24. Furthermore, the Committee respectfully requests that service of subpoenas by overnight mail upon each of the relevant parties at their last known business addresses and their counsel (if known) be deemed good and proper service.

25. The Committee has not previously filed a motion for the relief requested herein before this or any other Court.

WHEREFORE, The Committee respectfully requests that the Court enter an order in the form of the proposed order attached hereto, authorizing the Committee to serve document and deposition subpoenas on (i) , Rhonak Khichadia, (ii) Haresh Bhungalia and Bhungalia LLC (iii) Daniel Harrington and TVII Corp. (iv) Deepak Agarwal (v) Eddy Friedfeld (vi) Cliff Schneiderman and Cohen Schneiderman LLP and (vii) the Debtor, and granting such other, further relief as the Court deems to be just and proper.

Dated: February 16, 2017
      New York, New York

                                 NUTOVIC & ASSOCIATES
                    *Counsel to the Committee of Unsecured Creditors*

                                 By:s/*Isaac Nutovic*
                                  Isaac Nutovic, Esq.
                                  261 Madison Avenue, 26th Floor
                                  New York, N.Y. 10016
                                  Tel: (212) 421-9100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
x------------------------------------------------------------x
In re:

                                                    16-13131 (SCC)

                                                    Chapter 11

          CHOXI.COM, INC,

                                    Debtor
x------------------------------------------------------------x

                    ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004

        Upon the application (the "Application") of the Committee ("Committee") of Unsecured Creditors of Choxi.com, Inc ("Debtor") seeking entry of an order, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Committee to serve document and deposition subpoenas on: (i) , Rhonak Khichadia, (ii) Haresh Bhungalia and Bhungalia LLC (iii) Daniel Harrington and TVII Corp. (iv) Deepak Agarwal (v) Eddy Friedfeld (vi) Cliff Schneiderman and Cohen Schneiderman LLP and (vii) the Debtor ; it is hereby

        ORDERED that, pursuant to Bankruptcy Rule 2004, the Application is granted in all respects; and it is further

        ORDERED that, the Committee's attorneys, Nutovic & Associates ("N&A"), are authorized to serve subpoenas on the above-referenced entities and individuals compelling the production of documents as set forth in the document request annexed hereto as Exhibit "A" on a date no earlier than 14 days after service of the subpoena; and it is further

        ORDERED that, N&A is authorized to serve subpoenas on the above- referenced entities and individuals compelling the testimony on a date no earlier than 21 days after service of the subpoena;

ORDERED that, this Order is without prejudice to the Committee's right to file a further Rule 2004 application seeking additional documents or examinations if warranted in the circumstances; and it is further

ORDERED that, service of a copy of this order and the subpoenas by overnight mail upon each of the relevant parties and their counsel (if known) shall be deemed good and proper service of this order and the subpoenas.

# Exhibit A

DOCUMENT REQUEST

Unless otherwise agreed, responsive electronic Documents shall be produced in native format.  All Documents whose native format is that of a Microsoft Excel file (or other electronic spreadsheet file) shall be produced with a single-page placeholder (Group IV .tiff image) indicating that the file is a spreadsheet and shall be produced in native format, including the logical formulae within the cells of the spreadsheet and any metadata contained in the file.All Documents whose native format is that of a Microsoft Word or Word Perfect file (or other electronic word processed file) or Microsoft PowerPoint file (or other electronic presentation file), shall be produced with a single-page placeholder (Group IV .tiff image) indicating that the file is a .doc, .docx, .wpd, or .ppt file, or other file suffix as relevant and shall be produced in native format, including any metadata contained in the file.  The right to demand production of any other responsive Documents in their native format (including all metadata) is expressly reserved, and You must preserve all documents which You have a duty to preserve in their native format (including all metadata).  Responsive hard-copy Documents shall be produced with scanned images delivered as single-page 300-dpi-resolution Group IV .tiff image. Each image should have a unique file name and should be named with the beginning Bates number assigned to it.  Image file names should not contain spaces.

Definitions

Notwithstanding anything else to the contrary herein, each word, term or phrase used in these requests is intended to have the broadest meaning permitted under Fed. R. Civ. Proc. 26 and 34, as made applicable herein by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").  For purposes of these requests, the following definitions will apply:

The Uniform Definitions in Document Requests established by Local Rule 26.3 of the United States District Court for the Southern District of New York, made applicable by Rule 7026-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), are hereby incorporated into these requests as if fully set forth herein.

A.    "Identified Parties" means (i) , Rhonak Khichadia, (ii) Haresh Bhungalia and Bhungalia LLC (iii) Daniel Harrington and TVII Corp. (iv) Deepak Agarwal (v) Eddy Friedfeld (vi) Cliff Schneiderman and Cohen Schneiderman LLP and (vii) the Debtor.

B.    "Insider Group" means Rhonak Khichadia, Haresh Bhungalia and Daniel Harrington.

C.      "Insider Loan Transaction" refers to the transaction reflected in documents executed on or about September 2, 2016 in which the Insider Group made a secured loan of $2 million to the Debtor while simultaneously taking control of the Debtor's Board of Directors and operations.

D.      "Unsecured Loans"  means two loans of $1 million each to the Debtor made by Bhungalia Family LLC and HTV Industries on or about September 25, 2015.

### Items To Be Produced

1.      All documents and communications concerning the Insider Loan Transaction and the negotiation of terms for that transaction, including without limitation, drafts of agreements.

2.      All documents and communications concerning the value of the Debtor's assets collateralized in the Insider Loan Transaction at any time since February 2012, including without limitation,(i) the Debtor's mailing list, website and related technology (ii) receivables owing to the Debtor (iii) the Debtor's possible claims against third parties such as Iftikar Ahmed, Oak Investment Partners or Deepak Agarwal and projections of the likelihood of recovery of such claims in the event of a judgment.

3.      All documents and communications concerning any transfer of funds (i) to, or for, the Debtor, from, or on behalf of, any of the Insider Group; or (ii) to, or for, any of the Insider Group from, or on behalf of, the Debtor.

 4.      All documents and communications concerning business plans or financial projections for running the Debtor's operations after take over by the Insider Group.

5.      All documents and communications concerning the decision to terminate the Debtor's operations in October, 2016.

6.      All documents and communications concerning the Debtor's financial condition at any time since February 1, 2012, including but not limited to, audited or unaudited financial statements, balance sheets, cash and income statements, periodic reports, interim reports, profit and loss reports, QuickBooks files or reports or other financial reports.

7.    All documents and communications concerning financial projections for the Debtor, at any time since February 1, 2012, including without limitation, cash flow, operations, adequate capitalization, revenues or costs.

8.    All documents and communications concerning the Unsecured Loans, or Deepak Agarwal's ability to satisfy his guarantee of such obligations at any time since July 1, 2015.

9.    All documents and communications concerning the Debtor's attempts to sell its assets or equity at any time since February 1, 2012

10.   All communications between any of the Identified Parties or any of their employees concerning (i) Deepak Agarwal's relinquishing control over the Debtor or allowing a restructuring officer to assist him in his duties (ii) Deepak Agarwal's guarantee of the Unsecured Loans.